STATE OF WEST VIRGINIA *v.* OLAF MARTIN

(No. 7113)

Submitted March 29, 1932.    Decided April 5, 1932.

*E. L. Maxwell,* for plaintiff in error.

*Howard B. Lee,* Attorney General, and *R. A. Blessing,* Assistant Attorney General, for the State.

WOODS, JUDGE:

Olaf Martin was found guilty as principal in the second degree upon an indictment charging him and Mert Wamsley with rape, and sentenced to five years in the penitentiary. Wamsley was convicted of rape at the October, 1929, term and given a sentence of seven years. The judgment in that case was affirmed by this court in *State* v. *Wamsley,* 109 W. Va. 570, 156 S. E. 75, to which reference is asked for a complete statement of the facts. Martin was tried in March, 1931, some months subsequent to the foregoing decision.

The evidence in the instant case is substantially the same as that introduced at the trial of Wamsley. The prosecutrix testified that while she was out at the fence, which paralleled the highway, for the purpose of receiving a bucket which had been borrowed earlier in the day by some berry-pickers, the defendant, accompanied by Wamsley, drove by in a car,

stopped, backed up in front of the gate, and that Wamsley engaged her in conversation, and asked her to take a ride with them. He also inquired if any one was at home, to which she replied that "some are in the hayfield and the rest in town." The remainder of the testimony of the prosecutrix is to the effect that she started for the house; that the boys alighted and without invitation followed her into the front room of the dwelling; that she and Wamsley sat down, and defendant remained standing; that defendant went out at the front door, and that she did not know when he returned; that after defendant had left the room, Wamsley grabbed her and threw her on the bed, and accomplished the purpose of his lust; that she screamed; that when she got off the bed, defendant was standing inside the door on the opposite side of the room from the front door; that she went to the kitchen, and as she was attempting to leave the house, defendant grabbed her around the waist and got her back in the bedroom, and that Wamsley ran through the house and said "wait a minute!—there is a car coming!" Prosecutrix states that when she came to her senses her head was under a chair and her bloomers were off her left leg.

Counsel for defendant, on cross-examination, endeavored to discredit the testimony of the prosecutrix by pointing out certain alleged inconsistencies with former statements. He sought to show that prosecutrix had testified in the Wamsley case that the Martin boy stood just outside the front door, so that his shoulder was visible to her. However, from other portions of her testimony in that case, it appears that she was referring partly in regard to his position immediately after Wamsley had violated her person. The fact that the prosecutrix was unable to recall whether Wamsley had directed Martin to get him a drink of water, just prior to Martin's leaving the room, as appeared from her examination before the grand jury, was also stressed. Such a statement, if made, would have amounted to nothing more than a signal. This apparent lapse of memory was a matter for the jury to weigh along with all the other facts and circumstances.

Upon the completion of her case in chief, the State, upon being required to elect whether she would seek conviction of

defendant on the charge of rape, or as a principal in the second degree, chose the latter.

Defendant, while on the stand, admitted that he and Wamsley were in the Paugh home at about the time of the alleged crime. However, he states that he did not know that Wamsley had ravished prosecutrix, and that he heard the latter make no outcry. He denies having grabbed prosecutrix around the waist to keep her from leaving the house.

Now, as to the assignments of error. It is contended that the indictment was demurrable: (1) that but one can commit the act at a time, and if both did carnally know the prosecutrix, that it would require separate indictments; and (2) that if Martin was a principal in the second degree, the indictment should allege that he aided and abetted Wamsley. This whole matter was determined in the *Wamsley* case, *supra*. There we held that at common law persons present aiding and abetting, where rape is a felony, are principals equal in guilt with the direct perpetrator. Bishop, Crim. Law, (9th Ed.), sec. 1135. And may be charged in the indictment as having done the act. Russell on Crimes (7th English Ed.), 26, 29. The latter author, at page 114, says: "Where several are present and abet a fact, an indictment may lay it generally as done by all, or specially, as done by one and abetted by the rest. Or if the punishment for principals in the first and second degrees, is the same, all may be indicted as principals in the first degree." Our statute, Code 1923, chapter 152, section 6, provides: "In the case of every felony, every principal in the second degree * * * shall be punished as if he were principal in the first degree."

Counsel for defendant contends that the trial court's refusal to strike out the evidence of the prosecutrix as to what was done by Mert Wamsley in the absence of defendant was error. He takes the position that, before the conduct and acts of Wamsley in the absence of Martin would be proper as evidence against Martin, it was incumbent upon the State to prove that there was common design, conspiracy or undertaking between the defendant and Wamsley to commit the offense charged in the indictment. Whether or not the defendant aided and abetted must be determined from

the conduct of Wamsley and defendant from the time they got together, until after the offense was committed by the principal. The common design must be determined from the evidence as a whole. *State* v. *Powers,* 91 W. Va. 737, 113 S. E. 912. The jury, under the facts in this case, had a right to infer that defendant was at least constructively present.

The State's election to seek conviction on the theory that defendant was present aiding and abetting Wamsley in the commission of the offense of rape, clearly defined the issue before the jury. Her instructions were written in accordance with this idea. The seventeen instructions given at the instance of the defendant submitted every theory advanced in his behalf. In addition to dealing with reasonable doubt, burden of proof, and other stock instructions, they also told the jury in no uncertain terms that unless they believed that the defendant actually aided and abetted Wamsley in ravishing and carnally knowing the prosecutrix, that they should find him not guilty. The jury were also told that Martin's mere presence at the place, or near the place, when the prosecutrix says she was ravished by Wamsley, is not sufficient to render him guilty, and that unless they believe from the evidence that Martin said or did something, knowing the offense was to be or was being committed, that contributed to its execution, then they should find him not guilty. Taking the instructions as a whole, they were most favorable to the defendant. Instruction No. 15, which was refused, would have told the jury that defendant could not be guilty in aiding and abetting Mert Wamsley in committing the offense of rape under the indictment in this case. As already shown, such is not the law. *State* v. *Wamsley, supra.* We are also of opinion that No. 19 is patently erroneous. By it the defendant sought to tell the jury that although they might believe from the evidence beyond a reasonable doubt that Martin was present or near when the offense was committed, and that he did not interfere or attempt with word or act to arrest the violence, that such conduct on his part is not a circumstance against him.

A careful perusal and study of the record convinces us that the trial was fair in every respect. The court below seems to have striven to preserve and secure for the defendant all his rights. Every circumstance that could possibly tend to exculpate the defendant was presented to the jury by able counsel with commendable zeal. The verdict of the jury forecloses debate about defendant's guilt; and it therefore follows that the judgment must be affirmed.

*Affirmed.*