STATE OF WEST VIRGINIA

*v.*

EDWIN D. JONES *and* MYRNA JONES

(No. 13718)

Decided December 20, 1977.

56

*Cleo S. Jones*, for plaintiffs in error.

*Chauncey H. Browning*, Attorney General, *Marianne Kapinos*, Assistant Attorney General, for defendant in error.

MILLER, JUSTICE:

Defendants Edwin and Myrna Jones appeal their first degree arson conviction rendered in the Circuit Court of Kanawha County. They claim that at best the State's evidence shows that they were accessories before the fact, yet the indictment did not charge such offense.[1]

The crime of first degree arson is set out in *W.Va. Code*, 61-3-1.[2] The defendants contend that in this section the crime of first degree arson encompasses not only the acts of actually setting or aiding the setting of a fire, which would make one liable as a principal in the first or second degree, but also the act of procuring a burning, which would make one liable as an accessory before the fact.

Consequently, the defendants argue that *W.Va. Code*, 61-3-1, creates separate and distinct crimes because proof of the elements warranting conviction as a principal is different from the proof required to convict one as an accessory before the fact.

It is further argued that an indictment charging one as a principal will not support a conviction as an accessory before the fact. It is also urged that while the indictment sufficiently charges the defendants as principals, it fails as an indictment charging them as accessories before the fact, since it does not name the principal.

[1] The material part of the indictment is as follows: "THOMAS E. WHITTINGTON, EDWIN D. JONES AND MYRNA JONES, on the ___ day of April, 1973, in the said County of Kanawha, that certain dwelling house, to-wit: the dwelling house of one Edwin Jones, then and there situate did wilfully, maliciously, feloniously, and unlawfully set fire to, aided, counselled and procured to be burned and burned and caused to be burned."

[2] Any person who wilfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any dwelling house, whether occupied, unoccupied or vacant, or any kitchen, shop, barn, stable or other outhouse that is parcel thereof, or belonging to or adjoining thereto, whether the property of himself or of another, shall be guilty of arson in the first degree, and upon conviction thereof, be sentenced to the penitentiary for not less than two nor more than twenty years."

As an alternate attack on the indictment, the defendants urge that it does not plainly inform them of the offense of which they were charged and, as a result, violates Article III, Section 14 of the West Virginia Constitution.

Finally, we note that the defendants first raised these points pursuant to a motion for new trial. We must, therefore, if we find the indictment defective, further consider whether the defect was cured by our statute of jeofailes, *W.Va. Code*, 62-2-11.[3]

Judge Haymond in *State ex rel. Brown v. Thompson*, 149 W. Va. 649, 654-657, 142 S.E.2d 711, 715-717 (1965), *cert. denied*, 382 U.S. 940, made a thorough and perceptive analysis of the law concerning the degrees of participation in a criminal act. *See also*, III W. Holdsworth, *A History of The English Law* 307-310 (5th ed. 1942). We need only to distill the essential guidelines from *Thompson* to begin our analysis of the problems raised in this case. First, one who is the absolute perpetrator of the crime is a principal in the first degree. Second, a person who is present, aiding and abetting the crime is a principal in the second degree.

Third, an accessory before the fact is one who is absent at the time and place the crime is committed, but who has procured, counseled, encouraged or otherwise assisted the person who commits the crime. It is the absence of the accessory before the fact at the time and place of the commission of the crime that marks the essential difference of this crime.

Fourth, and a point not discussed in *Thompson*, an accessory after the fact is one who, knowing that a crime has been committed by another, receives, relieves or assists such other to escape arrest or punishment.

---

[3] "Judgment in any criminal case, after a verdict, shall not be arrested or reversed upon any exception to the indictment or other accusation, if the offense be charged therein with sufficient certainty for judgment to be given thereon, according to the very right of the case."

*Wren v. Commonwealth,* 67 Va. (26 Gratt.) 952 (1875); *Buck v. Commonwealth,* 116 Va. 1031, 83 S.E. 390 (1914); 21 Am. Jur. 2d *Criminal Law* § 126.

These are essentially the common law categories of criminal participation. In our State, as in other states, the Legislature has made certain statutory modifications. Under *W.Va. Code,* 61-11-6, certain persons related to the principal felon or accessory before the fact cannot be held as an accessory after the fact.[4]

Furthermore, this section established the same punishment for a principal in the second degree and an accessory before the fact as that set for a principal in the first degree. It sets a penalty for an accessory after the fact at a reduced level.[5]

As *Thompson* notes, our law requires that an accessory before the fact must be indicted as such and an indictment as a principal will not support a conviction for accessory before the fact. *State ex rel. Muldrew v. Boles,* 151 W. Va. 1033, 159 S.E.2d 36 (1968); *State v. Powers,* 91 W. Va. 737, 113 S.E. 912 (1922); *State v. Roberts,* 50 W. Va. 422, 40 S.E. 484 (1901). While there is little case law discussion of the reason for this rule, it seems apparent that it is based on the difference in elements of proof necessary to convict a principal felon and an accessory before the fact for a crime.

Some states have abolished by statute the common law distinctions between principals in the first and second degree and accessories before the fact, making them

---

[4] "But no person in the relation of husband and wife, parent or grandparent, child or grandchild, brother or sister, by consanguinity or affinity, or servant to the offender, who, after the commission of a felony, shall aid or assist a principal felon, or accessory before the fact, to avoid or escape from prosecution or punishment, shall be deemed an accessory after the fact."

[5] "In the case of every felony, every principal in the second degree, and every accessory before the fact, shall be punishable as if he were the principal in the first degree; and every accessory after the fact shall be confined in jail not more than one year and fined not exceeding five hundred dollars." W. Va. Code, 61-11-6.

all liable as principals.[6] It is clear, however, that *W.Va. Code*, 61-11-6, providing for the equality of punishment between principals and accessories before the fact, has been construed as not to have abolished the substantive distinction between the parties to a crime. *State ex rel. Muldrew v. Boles, supra,* 151 W. Va. at 1044, 159 S.E.2d at 42.

Therefore, the State's contention that by virtue of the equality of punishment provided in *W.Va. Code*, 61-3-1, the Legislature intended insofar as the crime of first degree arson is concerned to abolish the distinction between a principal and an accessory before the fact, is not valid under *Muldrew, supra.*

A further argument advanced by the State is that the arson statute merely enunciates a series of acts, any of which may result in conviction of first degree arson. Among the several acts are those which aid, counsel or procure the burning of a dwelling house. In this connection, *Pyles v. Boles,* 148 W. Va. 465, 135 S.E.2d 692 (1964), *cert. denied,* 379 U.S. 864, is cited. *Pyles* involved the kidnapping statute in which multiple acts are stated, any or all of which would constitute the crime of kidnapping. This Court stated that the fact multiple acts were stated in the statute and in the indictment did not mean that the defendant was charged with multiple offenses, but rather a single offense committed by a series of acts.

Here the arson statute sets out acts committed by different criminal participants. The problem in *Pyles* was whether the series of acts constituting kidnapping could be considered as separate criminal acts. The arson statute distinguishes the different persons: "... *who* sets fire to or burns ... or *who* aids, counsels or procures the burning ..." *W.Va. Code*, 61-3-1 [emphasis added]. The quality of each set of acts under the arson statute is manifestly different, the first category being direct, the second indirect.

---

[6] *See, e.g.,* Vt. State Annot. tit. 13 §4; Wash. Rev. Code Annot. § 9A.08.020; Wyo. Stat. § 6-14.

The Maryland court appears to be the only court which has confronted this question with an arson statute similar to ours.[7] In *Wimpling v. State*, 171 Md. 362, 189 A. 248 (1937), it was held that the statute created separate offenses of the actual burning and counseling or procuring the burning. In *Butina v. State*, 4 Md. App. 312, 242 A.2d 819, 822 (1968), further elaboration of this point was made:

> "Since under the statute two separate substantive offenses of arson are defined, it follows that to be validly convicted a person must be properly charged with the offense of arson which the evidence shows he committed. So if he, in fact, set fire to or burned or caused to be burned a dwelling house, he cannot be convicted on a charge that he aided, counseled or procured the burning, and vice versa."

We conclude that there is nothing within the terms of the first degree arson statute which abolishes the distinction between one who is guilty of arson as a principal and one who is guilty as an accessory before the fact. Nor do we believe the Legislature intended such a radical change in the law without so stating unequivocally. This being the case, we must consider whether the indictment sufficiently charges defendants as accessories before the fact.

The indictment charged the defendants, as well as Thomas E. Whittington, ". . . did wilfully, maliciously, feloniously and unlawfully set fire to, aided, counselled and procured to be burned and burned and caused to be burned" the dwelling house of Edwin Jones. It is rather obvious that the language of the indictment attempts to

---

[7] Md. Annot. Code art. 27, § 6:

"Any person who wilfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any dwelling house ... whether the property of himself, or of another, shall be guilty of arson, and upon conviction thereof, be sentenced to the penitentiary for not less than two nor more than twenty years."

follow the statutory language.[8] Clearly the indictment charges the defendants as principals in the burning of the dwelling house. It also charges that they "counselled and procured to be burned." These words suggest a charge of accessory before the fact, although nothing in the indictment directly states the name of the person with whom the defendants counseled or procured, or that he was unknown.

It is clear from the record that the defendants were not present at the time the fire was set in the dwelling house. They could not have been convicted as principals in the first or second degree. This fact is not disputed by the State.

The cases of *State v. Garcia*, 140 W. Va. 185, 83 S.E.2d 528 (1954); and *State v. Howard*, 137 W. Va. 519, 73 S.E.2d 18 (1952), are of particular importance. There the Court held that an indictment for aiding and abetting which did not allege the name of the principal if known and if unknown did not state such fact, was void and would not support a conviction for aiding and abetting. The Court relied on the earlier case of *State v. Stone*, 109 W. Va. 721, 156 S.E. 80 (1930), which had held that an indictment for aiding and abetting must state the name of the principal if known, and if unknown this should be alleged.

In *Stone, Howard* and *Garcia*, the court predicated its decision on that portion of Article III, Section 14 of the West Virginia Constitution, which requires the accused to be fully and plainly informed of the character and cause of the accusation.[9]

---

[8] It is even more obvious that the prosecutor could derive no help from the statutory indictment form for arson, *W.Va. Code*, 62-9-8, since the arson statute was radically changed after the indictment form was adopted.

[9] Contrasting the language of Article III, Section 14 of our Constitution: "In all such trials, the accused shall be fully and plainly informed of the character and cause of the accusation . . ." with the same provision in the Sixth Amendment to the Federal Constitution ". . . to be informed of the nature and cause of the accusa-

The distinction between being convicted as a principal in the first degree and as a principal in the second degree as aider and abetter was discussed recently in *State v. Bennett*, W. Va., 203 S.E.2d 699 (1974). There, the Court held that one who was indicted as a principal in the first degree could not be convicted on proof that he was a principal in the second degree, as there was a fatal variance between the indictment and the proof.

The present case presents a problem that is directly within the ambit of *Stone, Howard, Garcia* and *Bennett*. It has long been the law of this State that an accessory before the fact must be indicated as such before his conviction will stand. In other words, if indicted as a principal he cannot be convicted on proof that he was an accessory before the fact. *State ex rel. Muldrew v. Boles, supra; State ex rel. Brown v. Thompson, supra; State v. Franklin,* 139 W. Va. 43, 79 S.E.2d 692 (1953).

Under *Stone, Howard* and *Garcia*, it is clear that to meet the constitutional requirement of fully informing the accused, an indictment of one as an aider and abetter is required to identify the principal or, if not known, to so state this fact. The same rule must be deemed to apply to an indictment for an accessory before the fact whose link to the crime itself is the act of counseling and procuring the principal to commit it. We hold, therefore, an indictment charging a defendant as an accessory before the fact to the commission of a crime must name the principal, if known, or if unknown must state such fact.

The question arises as to whether this defect in the indictment was cured by our statute of *jeofailes*. *Stone, Howard, Garcia* and *Bennett* did not discuss this point. Certainly by inference it could be said that the Court believed the defect not curable. The law appears settled that the statute of *jeofailes* will not cure substantial defects in an indictment.

---

tion . . .", it seems that our constitutional requirement mandates a fuller specification of the charge than required under the federal provision.

Where the defects in an indictment are substantial, they may be raised after verdict on motion for new trial, more technically denominated motion in arrest of judgment. Thus, in *Scott v. Harshbarger*, 116 W. Va. 300, 180 S.E. 187 (1935), the Court on a habeas corpus proceeding voided an indictment which had failed to set out all the elements of the offense of abortion. The habeas corpus proceeding was filed after the defendant was incarcerated upon his conviction. In *State v. McGinnis*, 116 W. Va. 473, 181 S.E. 820 (1935), the indictment was attacked after verdict on the basis it failed to allege the element of intent. This Court held the indictment void, stating:

> "Though the sufficiency of this indictment was not challenged in the trial court by motion to quash, demurrer or motion in arrest of judgment, the defect is of such serious nature that it should have been taken into consideration by the court on the motion to set aside the verdict and award a new trial. By failure to demur to or move to quash an indictment, an accused waives any benefit he might have taken of secondary defects therein, but he does not waive primary defects—'does not waive the objection that the facts stated do not constitute an offense.' 31 Corpus Juris, p. 823; Herron v. State, 118 Miss. 420, 79 So.289; State v. Robinson, 74 Ore. 481, 145 P. 1057; State v. Martin, 54 Ore. 403, 100 P. 1106, 103 P. 512; People v. Grinnell, 9 Cal. App. 238, 98 P. 681."

*McGinnis* and *Harshbarger* were relied upon in *State v. Ray*, 122 W. Va. 39, 7 S.E.2d 654 (1940), where a statutory rape indictment was held void on appeal after a conviction.

We, therefore, conclude that the statute of *jeofailes* did not cure the defect in the indictment, which was the failure to properly charge the defendants as accessories before the fact.

Defendants have assigned several other errors which must be discussed. They contend State's Instruction No.

$2^{10}$ was defective in that it added the words "planned" and "encouraged" to the statutory language of "aids, counsels or procures." We do not believe these additional words expanded or changed the meaning of the statutory language nor the common law definition of an accessory before the fact. However, we do find the instruction defective as it did not require the jury to find that the defendants counseled and encouraged the principal who in fact committed the arson. *State v. Thompson, supra.*

Defendants also complain of State's Instruction No. 5, a circumstantial evidence instruction, on the basis that this was not a circumstantial evidence case. Clearly, parts of the case were built on circumstantial evidence and the instruction was proper.

Defendants claim error as to rejection of their Instruction No. 7.[11] It appears from the record that the instruction was withdrawn, but even if not withdrawn the instruction could properly have been rejected on the ground that it was confusing.

Finally, defendants argue that their Instruction No. 8 should have been given, which read:

---

[10] "The Court instructs the jury that if you believe from the evidence in this case beyond a reasonable doubt that Thomas E. Whittington set fire to the dwelling house occupied by Edwin D. Jones and Myrna Jones as a dwelling house, as charged in the indictment, and if you further believe from the evidence in this case, beyond a reasonable doubt, that Edwin D. Jones and Myrna Jones, or either of them, though not present at the time of the fire, wilfully and maliciously planned, counseled, procured, encouraged or caused the burning of the said dwelling house, then you may find Edwin D. Jones and Myrna Jones, or either of them, guilty, as charged in the indictment."

[11] "The Court instructs the jury that although you may believe from the evidence that Thomas Whittington may have made a statement to Eddie Lester as to the guilt of the defendants, Edwin and Myrna Jones, you can only consider any such statement or any part thereof as evidence against the defendants, if such statements were made by Thomas Whittington, and if denied by Thomas Whittington, can only be considered by the jury as to the credibility of Thomas Whittington and not as to the guilt of the defendants."

"The Court instructs the jury that when a building is burned, the presumption is that it was caused by an accident rather than by the act of the defendants."

It does appear that as a general proposition of law the mere burning of a building gives rise to a presumption that the fire was caused by accident or natural causes rather than by incendiary origin. *Braxton v. Commonwealth*, 209 Va. 750, 167 S.E.2d 120 (1969); *Simmons v. Commonwealth*, 208 Va. 778, 160 S.E.2d 569 (1968); *Simmons v. State*, 234 Ind. 489, 129 N.E.2d 121 (1955); *Ricketts v. State*, 192 Tenn. 649, 241 S.W.2d 604 (1950); *State v. Blocker*, 205 S.C. 303, 31 S.E.2d 908 (1944); *State v. Smith*, 142 Wash. 57, 252 P. 530 (1927); 6A C.J.S. *Arson* § 38; 5 Am. Jur. 2d *Arson* §§ 46, 48.

This rule has been utilized in determining whether the state has sustained its burden of proof, since proof of the *corpus delicti* of arson requires that the fire was of an incendiary origin. We are not directed to a case where the point discussed is whether a specific instruction of this nature must be accepted in a case where the fire was of an incendiary origin.

The rule itself seems designed only to operate where there is an unexplained fire or a mere burning. The fact that the fire is of an incendiary origin does not mean that the defendants caused it. They are still entitled to instructions on their presumption of innocence, which were given in this case. There was no error in the court's refusal of this instruction under the facts of this case.

Defendants also assign error relating to the court's refusal to permit them to cross-examine the attorney who represented Thomas Whittington, the co-indictee who had testified against the defendants. Whittington had entered a guilty plea to a lesser offense and defendants' attorney wanted to cross-examine his attorney on the circumstances surrounding the plea bargaining agreement to show bias or expected favor on the part of the defendant Whittington.

As a general rule in both civil and criminal cases, bias, prejudice or expected favor as a result of testifying is admissible on the issue of credibility. *State v. Woods*, 155 W. Va. 344, 184 S.E.2d 130 (1971); *State v. Lawson*, 128 W. Va. 136, 36 S.E.2d 26 (1945); *State v. Boswell*, 107 W. Va. 213, 148 S.E. 1 (1929); *State v. Willey*, 97 W. Va. 253, 125 S.E. 83 (1924). However, in the present case, defendants' counsel, through cross-examination of Whittington, brought out the fact of his plea bargain to a lesser charge, as well as his previous criminal record. Consequently, the court's refusal to permit testimony of Whittington's attorney on the same subject was not error. *Davis v. Commonwealth*, 215 Va. 816, 213 S.E.2d 785, 789 (1975); *United States v. Truslow*, 530 F.2d 257, 266 (4th Cir. 1975). At most, such testimony would only have been cumulative.

Defendants' remaining assignments of error relate to specific objections made to testimony. They are not vigorously pressed and do not constitute reversible error.

For the reasons set out herein, the judgment of the Circuit Court of Kanawha County is reversed.

*Reversed and remanded.*